MaddeN, Judge,
dissenting:
Article 4 of the contract, quoted in finding 5, says:
Article 4. Changed conditions. — Should the contractor encounter, or the Government discover, during the progress of the work subsurface and/or latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they do so materially differ the contract shall, with the written approval of the head of the department or his duly authorized representative, be modified to provide for any increase or decrease of cost and/or difference in time resulting from such conditions.
I think the provisions of the article were applicable and the contracting officer was under a duty to make an equitable adjustment. The purpose of the article is to induce bidders not to increase their bids because of fear of unknown impediments to profitable performance. For the sake of obtaining a lower bid the Government is willing to forego the security of an unconditional promise of the contractor to accomplish specified results for a fixed or computable price, regardless of impediments. If the article is to accomplish its purpose, it must mean, in a case like this, that the physical facts which the Government describes in its invitation for bids and which *713 the bidder assumes in computing his bid, may be taken as given, so far as they are material to the computation. If, as here, the bid is a unit price bid, the approximate number of the units, and the average quality of the units, with regard to the ease or difficulty of their handling, are the things most essential to know in computing the bid. If the bidder figures the bid closely, as Article 4 is intended to induce him to do, but finds upon performance that the number of pay units is some hundreds of thousands less than both parties supposed, and that the missing units are those which would have been easiest and most profitable to handle, he in fact loses money though he has bid prudently. If the Government had knowingly or negligently misled him into the same financial plight in which he finds himself, it would be liable to him in damages. I think that, in general, Article 4 means that the Government promises him equitable treatment when he finds himself in that situation, though it was not at fault in getting him there.
Here the Government survey had shown that approximately 2,894,500 cubic yards of pay dredging would be available in the plaintiff’s section. In setting that figure it had discounted the gross amount in place by 25% because of expected erosion due to the normal currents flowing through the cuts while dredging was going on. The Government and the plaintiff assumed that the materials to be dredged would have the normal quality of canal bottom materials with which both were familiar, from past experience. The plaintiff made its bid. Then came the hurricane and scoured out some hundreds of thousands of pay units of the materials, most of the units being of a quality most profitable to handle, and being removed from a location where they could have been hauled away by the shortest haul. The Government and the plaintiff, still in ignorance of the changed condition, made their contract. As I have indicated, I think that when the true condition was discovered, an equitable adjustment was due under the contract.
The statements of the contracting officer and the Chief of Engineers, in answer to the plaintiff’s claim, do not seem to me to answer it. They point out that the estimated yardage given in the invitation for bids was only an approximation, and that the invitation said that reduction in quantity through *714 scour was to be expected. But that expected reduction had been discounted in the invitation, and a hurricane was not to be expected, and was not expected. The condition was in fact as unforeseen and unusual as the hurricane which produced it.
I am not suggesting that Article 4 is intended to remove all risks from Government contracts. I think the holding in Arundel Corporation v. United States, 96 C. Cls. 77, that when an unusual flood destroyed the contractor’s work when half finished, the Government was not liable, was right. Article 4 did not in terms apply. But I think it does apply here, and I would give the plaintiff a judgment.
JoNes, Judge, took no part in the decision of this case.